The Honorable S. Kate Vaughan

# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. MJ21-500 |
| Plaintiff, | **COMPLAINT FOR VIOLATION** |
| v. | Title 21, United States Code, Section 841(a)(1) |
| ALEXANDER CONRY, | |
| a/k/a Phazar, | |
| Defendant. | |

Before S. Kate Vaughan, United States Magistrate Judge, U.S. Courthouse, Seattle, Washington.

The undersigned complainant being duly sworn states:

## COUNT 1

**Conspiracy to Distribute Controlled Substances**

Beginning at a time unknown and continuing until on or about September 8, 2021, in King County, within the Western District of Washington, and elsewhere, ALEXANDER CONRY a/k/a Phazar, and others known and unknown, did knowingly and intentionally conspire to distribute substances controlled under Title 21, United States Code, Section 812, Schedules I and III, including cocaine, 3,4-Methylenedioxymethamphetamine ("MDMA"), and ketamine.

Complaint / Conry - 1
2021R00395

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 846.

And the complainant states that this Complaint is based on the following information:

I, ERNEST MCGEACHY, being first duly sworn on oath, depose and say:

## I. INTRODUCTION AND AGENT BACKGROUND

2. I am a Special Agent ("SA") with the U.S. Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), assigned to the Special Agent in Charge ("SAC"), Seattle, Washington. I have been a Special Agent with HSI since October 2010. HSI is responsible for enforcing the customs and immigration laws and federal criminal statutes of the United States. As part of my duties, I investigate violations of Controlled Substances Act, Title 21, United States Code, Section 801 *et seq.*, and related offenses, including money laundering and cybercrime. I have investigated and/or participated in many federal criminal investigations involving narcotics, cryptocurrency, and cybercrimes on the dark web.

3. I am a graduate of the Federal Law Enforcement Training Center ("FLETC") Basic Criminal Investigator Training Program, the Immigration and Customs Special Agent Training Program, and the Naval Criminal Investigative Service (NCIS) Special Agent Training Program. Before joining HSI, I worked as a Special Agent with NCIS and as a Customs and Border Protection officer. I have attended HSI's Advanced Darknet and Cryptocurrency course.

4. As a Special Agent, I have participated in narcotics investigations which included physical surveillance and electronic surveillance on subjects in conjunction with phone and vehicle tracking. I have participated in investigations into drug trafficking that involved the execution of search warrants on residences and vehicles, the arrests of target individuals, and other law enforcement actions. I have received training in, and have

Complaint / Conry - 2
2021R00395

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

participated in investigations involving, drug identification, drug interdiction, drug trafficking, drug smuggling, and money laundering techniques. I am familiar with the methods and tools used by individuals and/or organizations who are involved in the illegal possession, possession for sale, sale, importation, smuggling, manufacturing, and trafficking of controlled substances. I am further familiar with the various trends, materials, tools, methods, and paraphernalia used by traffickers in import, concealment, and distribution of narcotics, particularly over the Darknet.

5. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is submitted for the limited purpose of establishing probable cause for this tracking warrant; accordingly, it does not include every fact known to me about this investigation or related investigations.

6. The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement personnel; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing probable cause to believe that Defendant committed the crime set forth herein, this document does not contain all of my knowledge of the larger investigation.

## II. PURPOSE OF AFFIDAVIT

7. This Affidavit is made in support of a Complaint against ALEXANDER CONRY for one count of *Conspiracy to Distribute Controlled Substances* in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and 846.

## III. SUMMARY OF PROBABLE CAUSE

8. This investigation is being conducted by investigators with IRS-CI, HSI, and USPIS. Based on the investigation to date, investigators believe that Jeffrey

Complaint / Conry - 3
2021R00395

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Stephens runs several vendor accounts on Darknet marketplaces,[1] which he uses to
2  facilitate his distribution of controlled substances, including cocaine, MDMA, and
3  ketamine. Investigators also believe that ALEXANDER CONRY has been assisting in
4  Stephens' drug trafficking operation by assisting Stephens in fulfilling orders through his
5  Darknet vendor accounts and providing Stephens with advice and technical support in
6  encrypting his communications and concealing his operations from detection by law
7  enforcement.

       9.    This investigation arose out of an undercover operation that IRS-CI has been conducting into money laundering on the Darknet. In December 2018, an individual later identified as Stephens responded to advertisements posted by IRS-CI on Darknet marketplaces, in which IRS-CI posed as a money launderer offering to "legitimize" illegal proceeds by anonymously converting cryptocurrency into U.S. dollars. Between December 2018 and the present, Stephens has conducted 84 suspected money laundering transactions with IRS-CI, resulting in cash totaling over a $1,000,000 being mailed at Stephens' direction to Certified Mail Receiving Agencies ("CMRAs")[2] located throughout Western Washington, or provided directly to him at face-to-face meetings with an undercover agent. Stephens has told undercover agents working with the IRS that the cryptocurrency involved in these transactions constituted proceeds of Stephens' sale of controlled substances.

---

[1] Based on my training and experience, I know that the "dark web" or Darknet is a portion of the "Deep Web" of the Internet, where individuals must use anonymizing software or applications to access content and websites. Within the dark web, criminal marketplaces operate, allowing individuals to buy and sell illegal items, such as drugs, firearms, and other hazardous materials, with greater anonymity than is possible on the traditional Internet (sometimes called the "clear web" or simply the "web"). These online market websites use a variety of technologies, including the Tor network and other encryption technologies, to ensure that communications and transactions are shielded from interception and monitoring. There are several marketplaces that have appeared on the dark web that have offered contraband for sale, including narcotics. "Vendors" are the dark web's sellers of goods and services, often of an illicit nature, and they do so through the creation and operation of "vendor accounts" on dark web marketplaces. Customers, meanwhile, operate "customer accounts." Vendor and customer accounts are not identified by numbers, but rather monikers or "handles," much like the username one would use on a clear web site.

[2] A CMRA is a private business that accepts mail from the Postal Service on behalf of its customer.

Complaint / Conry - 4
2021R00395

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

10.     Beginning in September 2020, IRS-CI began conducting face-to-face meetings with Stephens and an IRS-CI undercover agent (UC1), who posed as the money launderer conducting the transactions. During these meetings, Stephens told UC1 that he has been selling controlled substances through several vendor accounts on Darknet marketplaces for approximately three years. CONRY has attended two meetings with Stephens and UC1, during which they discussed CONRY's role in Stephens' drug trafficking organization, which includes managing Stephens' Darknet vendor accounts and providing Stephens with advice and technical support for the electronic devices and encrypted communications applications that he uses.

11.     HSI and USPIS have confirmed that Stephens' Darknet vendor accounts distribute controlled substances by conducting several controlled buys of cocaine and ketamine from those accounts, beginning in June 2020.

12.     In meetings on July 29, 2021 and August 25, 2021, UC1 met with Stephens and CONRY, who had only been introduced to UC1 by his pseudonym "Phazar." On July 29, 2021, UC1 met with Stephens in Seattle, Washington to discuss the timeline for a controlled delivery of drugs that Stephens was expecting based on prior conversations and meetings with UC1. Part of the way through the meeting, CONRY joined Stephens and UC1 and began to discuss technical issues that Stephens was having with his electronic devices, cryptocurrency, and Stephens' Darknet vendor accounts. Early in the meeting, CONRY also stated that he had set Stephens up with a new cellular phone, which had Signal, an encrypted messaging application, on it.

13.     Later in the conversation, CONRY and Stephens began to discuss the quality of the controlled substances they currently had, with CONRY expressing concern that their current supply was bad quality. After noting that someone had said that "it" was "really bad," CONRY stated: "That's not good. That's just what he said dude. I personally don't know the difference. It looked good and it seemed to test alright." Stephens then stated that the product "tested the same as the last," but CONRY responded that "[I]t didn't. Not with my test." Based on my training and experience, and

Complaint / Conry - 5
2021R00395

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970


my experience in this investigation, I know that controlled substances, including MDMA, ketamine, and cocaine, can vary in quality and I believe that the "testing" that CONRY and Stephens were referring to was testing of the controlled substances they were selling over the Darknet to determine its quality. Moreover, I believe that Stephens and CONRY were specifically referring to ketamine, because shortly before this comment, Stephens said that he was "talking about the stuff that everyone is raving about." Customer reviews for one of Stephens' Darknet vendor accounts show that Stephens was receiving positive reviews related to purchases of ketamine around this time.

14. Stephens and CONRY further discussed how one of Stephens' Darknet vendor accounts had been down for some time, but that they had recently reactivated the moniker. CONRY expressed concern that customers would think that the new product – controlled substances – would be worse now that the account was back in business than it had been before. Stephens told CONRY "[t]hat's your job to mediate that," and CONRY indicated that it would "be a lot of messages." Based on my training and experience with how Darknet marketplaces operate, I believe CONRY referred to orders and customers messages that required responses from Stephens' darknet vendor through the Darknet marketplace. Stephens indicated it was CONRY's job to respond to these messages. Stephens and CONRY then began to brag about the "recent reviews" they had received and how proud they were of those reviews. CONRY specifically singled out a positive review by stating:

> CONRY: And they might still love us and support us because we have always been good. And then I would be like, it's not the best, but they liked us better than any of those other people.
> Stephens: I know. I was telling him about the reviews.
> CONRY: They are incredible.
> Stephens: I am so proud.
> CONRY: One said 'everyone else is a waste of time. We waited seven months for you guys to come back.' And I was like [inaudible]
> UC1: Oh Yeah.
> CONRY: And I am like, it's me, it's me. Like, nobody knows, but it's me. I just feel like they wouldn't think it was me in their mind.

Complaint / Conry - 6
2021R00395

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

```
Stephens: I think about that a lot, probably too much.
CONRY: Isn't it funny.
Stephens: It is funny.
CONRY: I am not that.
Stephens: I kinda of am.
CONRY: You are that. I have to try to be that image.
Stephens: Right. I definitely am.
CONRY: And, I have to try to be that image. And I have to get into character.
```

I have reviewed customer reviews for one of Stephens' Darknet vendor accounts on White House Market, which included one review using the same language referenced by CONRY during this conversation.

    15.    On August 25, 2021, UC1 met Stephens and CONRY in Seattle, Washington. During this meeting, Stephens asked CONRY if he only had his "burner" on him, and CONRY explained that he never brought his phones to meetings, but noted that he had messaged to say he would arrive in five minutes. Based on my training and experience, I know that a "burner" is a common term used by drug traffickers to refer to a phone that someone does not intend to use for long, making it more difficult for law enforcement to detect and investigate illegal activity. Later in the conversation, Stephens told CONRY when he gets back to his phone, he is going to have several messages from Stephens. Based on my training and experience, I believe CONRY left his devices in his vehicle, before walking to meet Stephens and UC1, which is why CONRY had to text Stephens when he parked to tell him he would be there in five minutes.

    16.    Stephens further explained to UC1 that CONRY "is the guy. My rock. He is the brainpower. Is security conscious. Will do his work, but doesn't need to get his hands dirty." CONRY then discussed his involvement in the delivery of "molly" as follows:

```
CONRY: You know the transfers I have done.
Stephens: Say what?
CONRY: I have done every transfer possible.
Stephens: I know.
```

Complaint / Conry - 7
2021R00395

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

CONRY: I know how to, I've walked around for eight miles with 20 - 10 pounds of Molly [MDMA] on my back.
UC1: Oh yeah?
CONRY: It's not a big deal. You have it [MDMA] in your messenger bag and you're just a businessman in a suit going home. Then you hand somebody the thing and they hand you $200,000 dollars and it's not a big deal. You can do it outside in a park when no one is around or you can go into their house or their car and do it. Like, I've done it a hundred times. So, it's not a big deal. No one is there. If you know the people coming. It's easy. It's easy. However, I am not going to be the guy driving and doing all that, but I've done it. I've done it a hundred times. It's kinda fun.
Stephens: It's kind a fun. I got him excited.
CONRY: I don't mind taking a bus…. It's kinda fun taking a bus across town with like $100,000 worth of shit [controlled substances] on your back and nobody knows because you look the part.

Based on my training and experience, I know that "Molly" is a term commonly used to refer to the drug MDMA.

17.     At the conclusion of the meeting, UC1 walked CONRY to his vehicle, which CONRY had parked several blocks away from the meeting location. UC1 identified CONRY's vehicle as a Mazda that is registered in CONRY's name. At this point, UC1 knew CONRY only by his pseudonym "Phazar" but, after looking at the Washington State driver's license photograph for CONRY, UC1 was able to positively identify "Phazar" as ALEXANDER CONRY. Investigators from HSI, IRS-CI, and USPIS subsequently conducted surveillance on CONRY, but eventually lost sight of the vehicle and terminated the surveillance.

//
//
//

Complaint / Conry - 8
2021R00395

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## IV. CONCLUSION

18. Based on the above facts, I respectfully submit that there is probable cause to believe that ALEXANDER CONRY did knowingly and intentionally commit the crime of *Conspiracy to Distribute Controlled Substances* in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and 846.

_____
Ernest McGeachy, Complainant
Special Agent, HSI

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the Defendant committed the offense set forth in the Complaint.

Dated this 8th day of September, 2021.

_____
The Honorable S. Kate Vaughan
United States Magistrate Judge

Complaint / Conry - 9
2021R00395

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970